UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
AMANDA RESTAINO                                         COMPLAINT
                                                                       JURY TRIAL DEMANDED

                                Plaintiff,

      -against-

PUBLIC SERVICE ELECTRIC AND GAS COMPANY (PSEG),
DOYLE SECURITY SYSTEMS INC.,
MICHAEL CULKIN, THOMAS SMITH,
JASON PORTS, and MARCO BOTTONI.

                                Defendants.
------------------------------------------------------------X

       Plaintiff, AMANDA RESTAINO by her attorney, Fred Lichtmacher of The Law Office of Fred Lichtmacher P.C., complaining of the defendants herein, respectfully alleges as follows:

## JURISDICTION AND VENUE

1. This action arises under federal law, more specifically pursuant to Title VII, 42 U.S.C. §§ 2000e et seq, and the New York State Law, more specifically pursuant to the New York Executive Law § 296et seq.

2. Pursuant to 28 U.S.C. §1391(b)(2), venue is proper in the Eastern District of New York, as events forming the basis of the Complaint occurred in this District and subject matter jurisdiction is conferred pursuant to 28 U.S.C. §§ 1331 and 1343 (a) (3 & 4).

3. Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over plaintiff's state law claims.

## PARTIES

4. At all times relevant plaintiff Amanda Restaino, was a resident of State of New York in the County of Suffolk and she identifies as a female.

5. At all times relevant Amanda Restaino was employed as a Security Command Officer at PSEG, contracted through Doyle Security Solutions Inc., hereinafter "Doyle" in New York City.

6. Defendant Doyle was and is a domestic business corporation authorized to do business in New York State with offices and a principal place of business situated at 792 Calkins Road, Rochester, New York 14623.

7. Defendant PSEG is an electric utility company authorized to do business in New York State with offices and a principal place of business at 80 Park Plaza, Newark, Essex County, within the State of New Jersey, 07102-4106.

8. At all times relevant, PSEG employed the individual defendants Michael Culkin, Thomas Smith, Jason Ports, Marco Bottani.

9. At all times relevant, defendants Michael Culkin, Thomas Smith, Jason Ports, Marco Bottani held supervisory roles at PSEG, and held supervisory positions over the plaintiff.

10. The individual defendants Michael Culkin, Thomas Smith, Jason Ports, Marco Bottani had the authority to do more than only carry out personnel decisions made by others' as they in effect controlled the terms and conditions of plaintiff's employment, as to working conditions, assignments, promotions and new positions being granted or not and as to the amount of money plaintiff could earn.

**Conditions Precedent**

11. Amanda Restaino filed a complaint with the EEOC against both Doyle and PSEG on March 02, 2022 alleging discrimination premised on her gender.

12. Both Doyle and PSEG employed more than the minimum number of employees for Title VII liability to be imposed as each entity employed more than 15 employees during more than 20

weeks in each of the relevant years.

13. Upon information and belief, both Doyle and PSEG had over 500 employees during more than 20 weeks in each of the relevant years.

14. On September 22, 2022 Ms. Restaino received a right to sue letter from the EEOC.

15. This Complaint is filed within 90 (ninety) days of receipt of the right to sue letter.

## Statement of Relevant Facts

16. Beginning on or about March 5, 2020, up until March 25, 2021, plaintiff was employed by Doyle located at 371 Merrick Rd. Rockville Centre, NY 11580, as a security command center operator, and she worked at the PSEG's building in the command center.

17. Plaintiff was a Doyle employee contracted to PSEG, and both Doyle and PSEG controlled the terms and conditions of plaintiff's employment.

18. Plaintiff worked primarily from the PSEG building at the main command center.

19. At the time of her hiring, plaintiff was one of only two females employed at that location out of approximately 30 employees overall.

20. Plaintiff job entitled her to work 32 hours per week.

21. Early into her employment with the defendants, plaintiff sent an email to all of the PSEG supervisors, including the individual defendants herein, notifying them of filth and safety hazards at the office.

22. After plaintiff made this complaint, she was immediately transferred to a different office, but a month or two later she was brought back to the dirty command center with the promise that "mouse traps were placed around the building".

23. When the plaintiff returned to the main command center, she felt compelled to begin cleaning the office because she did not want to work in a dirty, rodent infested work environment.

24. When plaintiff was cleaning the office, male coworkers and supervisors, including defendants Culkin and Smith, mocked and taunted her with gender biased remarks including that she was "nesting," a term used to refer to the period of time before a woman gives birth when she prepares the home and the baby nursery.

25. At one point, in response to plaintiff complaining about fleas in the office, plaintiff's supervisor, defendant Bottani, commented to her "you don't know what a flea is, you send one email and they do something because you're a woman."

26. Marco Bottani was purposely and sadistically leaving dirt on Ms. Restaino's desk and generally giving her more cleaning tasks.

27. Plaintiff reported defendant Marco Bottani to her supervisor, Nagy Elfakahany, but his bad behavior continued as he made gender biased statements to her.

28. All the individual defendants mocked Nagy Elfakahany, teasing him openly in front of the plaintiff, and embarrassing the plaintiff as well making her uncomfortable, as they were insinuating that there was a sexual relationship, possibly because Elfakahany was one of the few males who treated plaintiff with respect.

29. Defendants Port, Smith, Mottani and Culkin made comments that the plaintiff and Elfakahany were having sex and they did so by using the "F" word, further embarrassing the plaintiff.

30. Roughly two months into her employment, two males, Stephen Cooke and Daniel Krzeminiski were hired to perform in the same position plaintiff also held.

31. Even though they were hired after the plaintiff, they were routinely offered more pick-up shifts than plaintiff was in violation of office protocol which entitled senior employees to have the first choice on doing pick-up shifts.

32. When the plaintiff applied for a full time position (40 guaranteed hours as opposed to 32) that she was well qualified for, she was told that she did not pick up enough shifts, even though she had tried to pick up shifts, but her efforts were blocked and/or ignored by her supervisors who had given the shifts primarily to the two similarly situated male employees who had less seniority.

33. The full time position was given to male employee Stephen Cooke who had less seniority than plaintiff.

34. The plaintiff was informed that she did not get the position because supervisor defendant Jason Ports did not like her.

35. In a discussion with her supervisor defendant Culkin, about why she was denied the full time position, Culkin stated that "they could only handle one woman at a time" at the office, and he added "women are crazy" and there already was a woman on that shift.

36. Her supervisor, Bottoni used a company security camera to zoom in on plaintiff's derriere, in front of her coworkers and a supervisor, Nagy Elfakahany.

37. Plaintiff was also informed by a coworker that her supervisor Bottoni was making sexual comments about plaintiff during this incident.

38. Plaintiff was tested for her annual reviews by PSEG four times, while similarly situated male employees were tested only once or twice.

39. At another point, plaintiff requested to be considered for another position, to which a male supervisor responded "[I]t wouldn't be a good fit, because it is a very physically demanding job."

40. The supervisor insinuating that plaintiff could not do the job due to her gender, was inaccurate as plaintiff is somewhat of a gym rat and extremely physically fit and this was

clearly a case of gender stereo-typing.

41. Shortly thereafter, plaintiff contacted her Doyle supervisor William Lump to go over her concerns and said supervisor informed her she should have been offered the position Cooke had received based on seniority.

42. Plaintiff was informed by William Lump that it was Jason Ports sho improperly picked Cooke over the plaintiff for the full-time position.

43. During the last few months of her employment at PSEG Ms. Restaino began to receive text messages with images of male genitals and other private areas on her cellular phone.

44. Plaintiff brought this up to a coworker, and on her next shift, other male coworkers and supervisors began to ask her about it in detail.

45. Plaintiff had reason to believe that the images were coming from someone she worked with, as she had recently changed her phone number and only a handful of people had her new number, including a few people at PSEG, and said behavior was consistent with the way plaintiff was abused generally at work.

46. Upon information and belief defendant Port spoke to other supervisors about the images.

47. The supervisors began speaking openly and even within hearing of the plaintiff about it being dangerous to have a woman in the office, as there were high profile suits pending against officials in government for sexual harassment.

48. At or about this same time, the office became aware and spoke about Ms. Restaino having a sex harassment suit against her former employer.

49. Shortly after her conversation with Port, plaintiff was asked to come in for a conversation with her Doyle supervisor, which she assumed was finally going to be her opportunity to be promoted to being a full time employee.

50. Instead, during this conversation with William Lump, on March 25, 2021 plaintiff was told that PSEG wanted the plaintiff removed from her post.

51. Because PSEG requested that the plaintiff be removed from her then current post, she was informed that in order for Doyle to relocate the plaintiff she would have to take a job that paid a lower hourly amount than she was then making.

52. When plaintiff heard the news, she was visibly upset, so she stepped out to call a supervisor at Doyle, who at the time was in the presence of male coworkers, one of whom remarked to the supervisor "Oh nice, maybe she will Fu*k you," which statement was either made by a supervisor or in his presence and he laughed at it to the horror of the plaintiff.

53. Upon being terminated, plaintiff's position was filled by a man.

54. Throughout almost the entirety of her career with Doyle, plaintiff was treated differently and worse than similarly situated male employees, and when she tried to speak out about it, was retaliated against by her supervisors.

55. Plaintiff excelled at her job, and often took on responsibilities that extended outside of her outlined job scope in order to help her team, but was continuously denied the opportunity to apply for promotions and permanent job positions within PSEG.

56. The incessant demeaning treatment to which plaintiff was subjected resulted in pecuniary harms; humiliation, embarrassment and other emotional harms; she became physically ill; she was constructively terminated from her employment and she was otherwise harmed.

### AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFF VIOLATION OF PLAINTIFF'S RIGHTS PURSUANT TO TITLE VII, 42 U.S.C. §2000e-2(a) (1 & 2)

57. Plaintiff repeats, reiterates and reallege each and every allegation contained in the prior

paragraphs with the same force and effect as is more fully and at length set forth herein.

58. The defendants, Doyle Inc., and PSEG, caused, created, maintained and tolerated a hostile work environment riddled with gender prejudice in violation of Title VII, 42 U.S.C. §2000e-2(a) (1 & 2) to the detriment of plaintiff.

59. Amanda Restaino was treated differently and worse than similarly situated male employees by her supervisors, and by the upper management/human resources of Doyle and PSEG in violation of her rights protected by Title VII.

60. Ms. Restaino has been deprived by her employer of the same terms and conditions of her employment afforded to male employees due entirely to her being a female.

61. Defendants Doyle and PSEG knew of the disparate treatment and hostile work environment Ms. Restaino was subjected to premised on her gender, which occurred in the presence of supervisors and frequently at the hands of supervisors, but both Doyle and PSEG failed to act despite knowing of the disparate treatment.

62. Plaintiff's treatment by her employers and their supervisors created an intolerable and hostile work environment.

63. As a direct consequence of being subjected to a hostile work environment and gender discrimination, plaintiff has been damaged; she has been harmed pecuniarily; she has been harmed emotionally; she was denied opportunities for advancement; she had her employment history damaged; she was denied the ability to work in her chosen career; she was treated differently and worse than similarly situated male employees; plaintiff has suffered from depression and anxiety, she was constructively terminated from her job and she has suffered physical ailments resulting from the emotional trauma to which she was subjected.

64. As a result of the defendant Doyle's disparate and worse treatment of the plaintiff, she is

entitled to damages in the amount of THREE HUNDRED ($300,000.00) DOLLARS as well as separate awards for economic damages and punitive damages and an award of reasonable attorney's fees and costs is appropriate.

### AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF PLAINTIFF VIOLATION OF PLAINTIFF'S RIGHTS PURSUANT TO NEW YORK EXECUTIVE LAW §296 et seq.

65. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

66. The defendants DOYLE, PSEG and the individuals named herein caused, created, and maintained a hostile work environment, riddled with gender discrimination by and through the defendants.

67. The individual defendants named herein had the authority to do more than only carry out personnel decisions made by others' as they in effect controlled the terms and conditions of plaintiff's employment, as to working conditions, assignments, promotions, new positions being granted or not and ultimately as to the amount of money plaintiff could earn.

68. By the actions described *supra* the defendants created and maintained a work environment overtly hostile to female employees, and the plaintiff was damaged by being subjected to gender discrimination.

69. The defendants were responsible for and aware of the daily operations of the PSEG command center as they effected the plaintiff and they did nothing to correct the objectively hostile work environment replete with gender discrimination to which plaintiff was subjected.

70. As a direct consequence of being subjected to a hostile work environment and gender discrimination, plaintiff has been damaged; she has been harmed pecuniarily; she has been

harmed emotionally; she was denied opportunities for advancement; she had her employment history damaged; she was denied the ability to work in her chosen career; she was treated differently and worse than similarly situated male employees; plaintiff has suffered from depression and anxiety, she was constructively terminated from her job and she has suffered physical ailments resulting from the emotional trauma to which she was subjected.

71. By reason of the aforesaid, plaintiff has been damaged and is entitled to damages in the amount of ONE MILLION ($1,000,000.00) DOLLARS along with the costs and disbursements reasonably related to the prosecution of this matter.

### AS AND FOR A THIRD CAUSE OF ACTION ON BEHALF OF PLAINTIFF VIOLATION OF PLAINTIFF'S RIGHTS PURSUANT TO NEW YORK EXECUTIVE LAW §296(7) VIA RETALIATION

72. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

73. Plaintiff was subjected to retaliation in response to her complaints of defendants' actions in violation of New York Exec. Law §296(7).

74. The defendants engaged in the unlawful discriminatory practice of retaliating against the plaintiff due to the plaintiff's opposition and complaints about practices forbidden under the New York Exec. Law §296 et seq.

75. When plaintiff spoke out against not receiving the same shifts and overtime pay as similarly situated male employees, she was retaliated against in that she was given unfavorable shifts, and mocked around the office by her male coworkers and supervisors.

76. As a direct consequence of being subjected to a hostile work environment and gender discrimination, plaintiff has been damaged; she has been harmed pecuniarily; she has been

harmed emotionally; she was denied opportunities for advancement; she had her employment history damaged; she was denied the ability to work in her chosen career; she was treated differently and worse than similarly situated male employees; plaintiff has suffered from depression and anxiety, she was constructively terminated from her job and she has suffered physical ailments resulting from the emotional trauma to which she was subjected.

77. The plaintiff therefore is entitled to compensatory damages in an amount of ONE MILLION ($1,000,000.00) DOLLARS and she is entitled punitive damages an award of attorneys fees and the costs attributed to the prosecution of this action.

## AS AND FOR A FOURTH CLAIM FOR RELIEF
## ON BEHALF OF PLAINTIFF
## NEW YORK EXEC. LAW §296(6); AIDING AND ABETTING

78. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

79. All the defendants named herein participated in the unlawful discriminatory practice of aiding, abetting, inciting, and compelling or coercing the doing of acts forbidden under Executive Law § 296 et seq.

80. As a direct consequence of being subjected to a hostile work environment and gender discrimination, plaintiff has been damaged; she has been harmed pecuniarily; she has been harmed emotionally; she was denied opportunities for advancement; she had her employment history damaged; she was denied the ability to work in her chosen career; she was treated differently and worse than similarly situated male employees; plaintiff has suffered from depression and anxiety, she was constructively terminated from her job and she has suffered physical ailments resulting from the emotional trauma to which she was subjected.

81. The plaintiff therefore is entitled to compensatory damages in an amount of ONE MILLION

($1,000,000.00) DOLLARS and she is entitled punitive damages an award of attorneys fees and the costs attributed to the prosecution of this action.

**AS AND FOR A FIFTH CLAIM FOR RELIEF
ON BEHALF OF PLAINTIFF
<u>CONSTRUCTIVE TERMINATION</u>**

82. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

83. Plaintiff was constructively discharged by her employers, who rather than discharging her directly, intentionally created a work atmosphere so intolerable that she had no choice but to remove herself from the toxic environment her employers intentionally created to drive her out of their employ.

84. Plaintiff's work conditions were so intolerable, when viewed as a whole, that all reasonable people in her shoes would have felt compelled to resign.

85. As a direct consequence of being subjected to a hostile work environment and gender discrimination, plaintiff has been damaged; she has been harmed pecuniarily; she has been harmed emotionally; she was denied opportunities for advancement; she had her employment history damaged; she was denied the ability to work in her chosen career; she was treated differently and worse than similarly situated male employees; plaintiff has suffered from depression and anxiety, she was constructively terminated from her job and she has suffered physical ailments resulting from the emotional trauma to which she was subjected.

86. The plaintiff therefore is entitled to compensatory damages in an amount not to exceed ONE MILLION ($1,000,000.00) DOLLARS she is entitled to an award of punitive damages in an amount to be determined by the trier of fact and she is entitled to the costs attributed to the prosecution of this action.

**87.** **WHEREFORE,** Plaintiff respectfully request that judgment be entered as follows:

(A) Declaratory relief finding that Plaintiff's rights under 42 U.S.C. §2000e-2(a) (1 & 2) were violated;

(B) Compensatory damages to be determined at trial in a sum of not more than ONE MILLION ($1,000,000.00) DOLLARS

(C) By reason of the wanton, willful and malicious character of the conduct complained of herein, punitive damages against the Defendants in amounts to be determined at trial;

(D) An award to Plaintiff of the costs and disbursements herein;

(E) An award of attorneys' fees pursuant to 42 U.S.C. § 2000e-5(k) for Title VII violations as well as fees and costs pursuant to New York Executive Law § 296 et seq., and

(F) Such other and further relief as this Court may deem just and proper.

Dated: December 18, 2022
New York, New York

/ s /
Fred Lichtmacher
The Law Office of Fred Lichtmacher, PC
Attorneys for Plaintiff
116 West 23rd Street, 5th Floor
New York, York 10011
(212) 922-9066

To: Doyle Security Solutions Inc
Michael Culkin, Thomas Smith, Jason Ports, Marco Bottani
371 Merrick Rd
Rockville Centre, NY 11580

Public Service Electric and Gas Company
80 Park Plaza
Newark, NJ 07102